DMP:JGH/JEA/BFP
F. #2018R01373

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

        - against -

ABED AHMAD,
ALAA AHMAD,
CLAUDIA AYOUB,
MOUSTAFA AYOUB and
CONSTANTINE VASES,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

COMPLAINT AND AFFIDAVIT IN
SUPPORT OF APPLICATION FOR
ARREST WARRANT

No. 20-MJ-106
(18 U.S.C. §§ 1349 and 1956(h))

EASTERN DISTRICT OF NEW YORK, SS:

        JEFFREY A. MILLER, being duly sworn, deposes and states that he is a

Supervisory Special Agent with the Internal Revenue Service, duly appointed according to

law and acting as such.

**Bank Fraud Conspiracy**

        In or about and between November 2012 and June 2017, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants ABED AHMAD, ALAA AHMAD, CLAUDIA AYOUB, MOUSTAFA AYOUB

and CONSTANTINE VASES, together with others, did knowingly and intentionally conspire

to execute and attempt to execute a scheme and artifice to defraud JPMorgan Chase & Co., a

financial institution, and to obtain moneys, funds, credits, assets and other property under the

custody and control of said financial institution, by means of one or more materially false and

fraudulent pretenses, representations and promises, contrary to Title 18, United States Code, Section 1344).

(Title 18, United States Code, Section 1349)

## **Money Laundering Conspiracy**

In or about and between November 2012 and June 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ABED AHMAD, ALAA AHMAD, CLAUDIA AYOUB, MOUSTAFA AYOUB and CONSTANTINE VASES, together with others, did knowingly and intentionally conspire to conduct one or more financial transactions in and affecting interstate commerce, which involved the proceeds of a specified unlawful activity, to wit; bank fraud conspiracy, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity and knowing that the transactions were designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h))

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.      I have been employed as a Special Agent with the Internal Revenue Service–Criminal Investigation for approximately nineteen years.   I am currently a

---

[1]      Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

Supervisory Special Agent assigned to the New York Field Office.  I am responsible for, among other things, supervising, conducting and assisting in investigations into various white collar crimes including tax fraud, tax-related fraud, bank fraud, money laundering and identity theft.  I have participated in and conducted numerous investigations, during the course of which I have interviewed suspects and witnesses, executed court-authorized search and arrest warrants, and used other investigative techniques to secure relevant information.   As a result of my training and experience, I am familiar with techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement.

   2. I have personally participated in the investigation of the offenses discussed below.  I am familiar with the facts and circumstances of this investigation from: (a) my supervision of and participation in this investigation; (b) my review of records and reports generated by other law enforcement agents in the United States and elsewhere, including interviews of witnesses; (c) my review of communications recovered during the investigation; and (d) information provided to me by other agents and law enforcement officials.

  A. Overview

   3. As set forth in detail herein, the investigation has revealed that from at least as early as November 2012 through at least June 2017 (the "Charged Period"), the defendants ABED AHMAD, ALAA AHMAD, CLAUDIA AYOUB, MOUSTAFA AYOUB and CONSTANTINE VASES (collectively, the "Defendants") conspired with each other and others, known and unknown, to defraud JPMorgan Chase & Co. ("JPMC") and its customers by stealing millions of dollars from more than forty individual JPMC bank accounts, many of

which were held by bank branches in Queens, New York.  The Defendants also conspired with each other and others to launder the proceeds of their fraud by, among other things, using a complex web of financial transactions, shell entities, business and personal financial accounts and fictitious and stolen identities to receive, hide and ultimately transfer stolen funds to themselves and other coconspirators.  In total, the Defendants and their coconspirators engaged in more than 900 financial transactions to misappropriate more than $7.6 million of JPMC victim funds (the "JPMC Victim Funds") through each of their fraudulent means, which they then laundered and distributed among themselves and other coconspirators.

B.  The Defendants

ABED AHMAD & ALAA AHMAD

4.  From approximately September 2007 to May 2014, ABED AHMAD ("ABED") worked as a manager at a JPMC branch located in Astoria, Queens.   From at least November 2012 until he left JPMC in approximately May 2014, ABED abused his position of trust at the bank by repeatedly using its internal computer systems to access the customer account profiles of bank accounts belonging to more than 60 individual JPMC bank customers. ABED had no known legitimate business purpose for accessing these accounts, most of which were held by customers who were deceased by the time ABED began accessing their accounts. ABED accessed high-dollar value accounts, many of which were primarily funded by recurring benefit payments from the United States Social Security Administration and Department of Veterans Affairs.

5.  ALAA AHMAD ("ALAA"), ABED's brother, worked for JPMC from approximately December 2008 until January 2017, most recently as a relationship banker at a Queens branch.   While working at JPMC, ALAA also repeatedly used the internal computer

systems to access high-value accounts, also with no known legitimate business purpose for doing so.

6. In total, ABED and ALAA accessed more than 80 JPMC accounts held in the names of approximately 64 individual bank customers (the "JPMC Victim Accounts"), all of which were subsequently drained of the majority of their funds as part of the bank fraud and money laundering conspiracies described herein.

7. ABED and ALAA left their employment with JPMC before their criminal activity was discovered. ABED and ALAA both received a share of the misappropriated funds from the JPMC Victim Accounts for their roles in the bank fraud and money laundering conspiracies. After leaving JPMC, ABED and ALAA relocated to Florida and began operating Nai Restaurant, LLC ("Nai"), which did business as a restaurant under the name La Vie Lebanese Restaurant ("La Vie"). As set forth in greater detail below, records show that ABED's and ALAA's coconspirators, including MOUSTAFA AYOUB and CONSTANTINE VASES, funded a significant portion of the cost of La Vie using money stolen from the JPMC Victim Accounts that were improperly accessed by ABED and ALAA.

MOUSTAFA AYOUB & CLAUDIA AYOUB

8. The investigation has revealed that in furtherance of the bank fraud and money laundering conspiracies charged herein, MOUSTAFA AYOUB ("MOUSTAFA"), along with his other coconspirators, including his girlfriend CLAUDIA AYOUB ("CLAUDIA"), created and controlled numerous bank and credit card accounts, as well as businesses and shell entities, using the names and identifying information of multiple individuals, including family members and other associates, to create a web of financial transactions to disguise the nature, source, location, ownership and origin of the money that

MOUSTAFA, CLAUDIA and the other coconspirators misappropriated from the JPMC Victim Accounts.

9.      Both MOUSTAFA and CLAUDIA reside in Queens, New York and lived there throughout the Charged Period.   From approximately 2011 to 2015, MOUSTAFA and CLAUDIA rented an apartment on 29th Street in Astoria, Queens (the "29th Street Address").   MOUSTAFA, CLAUDIA and other coconspirators repeatedly used the 29th Street Address to create and manage a string of financial accounts and business entities that they used to transfer, launder and distribute among themselves misappropriated JPMC Victim Funds.

10.      Additionally, in approximately 2012, MOUSTAFA and CLAUDIA purchased a home on 42nd Street in Astoria, Queens (the "42nd Street Address"). MOUSTAFA and CLAUDIA also used this address to operate numerous financial accounts used to misappropriate and launder JPMC Victim Funds.

11.      The investigation has revealed that MOUSTAFA and CLAUDIA received more than $2 million in misappropriated JPMC Victim Funds during the Charged Period.   They did so by, among other things, using numerous financial accounts and business entities, including shell companies, tied to their 29th Street Address and 42nd Street Address.

CONSTANTINE VASES

12.      CONSTANTINE VASES ("VASES") is tax preparer and self-identified accountant who resides in Long Island, New York and works in Queens, New York.   VASES helped manage shell companies, including Freeform International, Inc. and Blackstone Capital Group, LLC, which were used to receive and redistribute stolen JPMC Victim Funds among VASES and his coconspirators.   VASES also produced fraudulent financial documentation,

including fictitious bank statements and invoices for goods and services and at least one fraudulent tax return, all in furtherance of the bank fraud and money laundering conspiracies. Furthermore, records, including a review of VASES's emails obtained pursuant to a judicially authorized search warrant, show that VASES was the purported accountant for entities controlled by ABED and MOUSTAFA that were used to launder JPMC Victim Funds during the Charged Period.

13. VASES received at least approximately $600,000 in JPMC Victim Funds during the Charged Period, including a significant portion laundered through multiple accounts before ultimately being transferred into VASES's home equity line of credit (the "VASES HELOC Account") against his home in Queens, New York, which VASES and his wife owned from approximately 2016 through March 2019.

C.   The Assumed Identities

14. The investigation has also revealed that the Defendants repeatedly used the names and personally identifiable information ("PII") of numerous people, including the holders of JPMC Victim Accounts.  In particular, the Defendants used the identities of real individuals to create and operate more than 40 financial accounts central to the bank fraud and money laundering conspiracies.  One such individual ("Individual-1") lived in Brooklyn until July 2011.  Records show that on or about July 29, 2011, Individual-1 left the United States and has not returned since.  A second such individual ("Individual-2"), lived in Queens until on or about September 4, 2014 when he/she left the United States.  Individual-2 has not returned to the United States.

15. Records, including bank and credit card statements, show that after Individual-1 and Individual-2 left the United States, MOUSTAFA, CLAUDIA, VASES and

other members of the conspiracy used their names and PII, including their dates of birth and driver's license information, to operate numerous bank and credit card accounts and business entities to misappropriate and launder JPMC Victim Funds.   In total, the Defendants and their coconspirators used such bank and credit card accounts to transfer approximately $6 million from JPMC Victim Accounts directly into accounts in the names of Individual-1 and Individual-2, which were controlled by the Defendants and their coconspirators.

16.     By way of illustration, MOUSTAFA and CLAUDIA operated numerous bank and credit card accounts in Individual-1's name that were directly tied to the 29th Street Address and 42nd Street Address.   These accounts received and laundered money stolen from JPMC Victim Accounts.   For example, records show that a Citibank Account in Individual-1's name ending 9814 (the "Individual-1 9814 Account") was registered to the 29th Street Address, years after Individual-1 left the United States.   The Individual-1 9814 Account received approximately $1.1 million in JPMC Victim Funds, much of which was subsequently transferred to personal and business bank accounts controlled by MOUSTAFA, CLAUDIA, VASES and other coconspirators.   Records further show that the Individual-1 9814 Account was also used on at least one occasion in 2014 to pay the monthly rent for the 29th Street Address.   The payment was made via a check drawn on the Individual-1 9814 Account and purportedly signed by Individual-1 despite his/her having been outside the United States since approximately September 2011.   Furthermore, bank security records show MOUSTAFA and CLAUDIA in March and April 2017 depositing laundered JPMC Victim Funds into the Individual-1 9184 account.

17.     As another example, a Citibank account in Individual 2's name and ending 1797 (the "Individual-2 1797 Account") was registered to a P.O. Box in Astoria, New

York.   Bank records show that the Individual-2 1797 Account was used on multiple occasions to launder and distribute JPMC Victim Funds among the coconspirators, including to pay tens of thousands of dollars of JPMC Victim Funds to the VASES HELOC Account.

D.   The Business Entities Used to Receive and Launder Misappropriated Funds

18.   In addition to using assumed identities to perpetrate the bank fraud and money laundering conspiracies, the Defendants and their coconspirators also used a series of business entities to receive, transfer, launder and distribute proceeds from the fraud, including multiple shell entities whose sole purpose was to facilitate the frauds.   In fact, by establishing many of these shell companies, members of the conspiracy, including ABED, ALAA, MOUSTAFA, CLAUDIA and VASES, were able to control bank accounts, acquire credit cards and obtain point-of-sale credit card terminals ("POS terminals") [2]  used to misappropriate and launder JPMC victim funds.

Nai Restaurant, LLC & La Vie

19.   Records show that on or about March 4, 2016, Nai restaurant was registered using the address of a residence owned by ALAA in Florida.   ABED lived at this residence from approximately 2015 to 2018, and ALAA lived there with him from approximately 2017 to 2018.   Records show also that ABED and another relative are managers of Nai which, as set forth above, did business as La Vie.   Records show that MOUSTAFA, CLAUDIA and VASES funded a significant portion of the cost of La Vie using misappropriated JPMC Victim Funds.

---

[2]   A POS terminal is an electronic device used to process card payments at retail locations.   A POS terminal generally does the following: reads the information off a customer's credit or debit card and checks whether the funds in a customer's bank account are sufficient.

Swap Real Estate & Global Network Marketing Solutions

20.     During the Charged Period, ABED registered Swap Real Estate, LLC ("Swap") in Florida and Global Network Marketing Solutions Incorporated ("Global") in New York.   Records show that both businesses existed in name only and were used as pass-through entities for ABED, ALAA and their coconspirators to launder and distribute misappropriated JPMC Victim Funds.   During the Charged Period, both ABED and ALAA used financial accounts in the name of Global and Swap to receive stolen JPMC Victim Funds.

M&H Sportswear, Inc.

21.     M&H Sportswear, Inc. ("M&H") is a purported sportswear company based in Queens, New York, and doing business under the name "Clothing Zone, Inc." Records show that MOUSTAFA is M&H's CEO and that the business address is the 29th Street Address.   In addition to its corporate filings, numerous bank accounts and other records link M&H to the 29th Street Address and the 42nd Street Address.   Records further show that M&H and its associated financial accounts were used repeatedly by MOUSTAFA, CLAUDIA, VASES and other coconspirators to receive, distribute and launder JPMC Victim Funds.

Astoria Food Mart, Inc.

22.     Records show that during the Charged Period, MOUSTAFA was also the president and owner of a Queens restaurant and grocery store, known at various points in time as Astoria Food Mart, Inc. ("Astoria Food"), Nour Foods and Cedars Meat House.   This business, one of the only brick-and-mortar locations used in furtherance of the charged conspiracies, was used by MOUSTAFA, CLAUDIA and others to receive and launder JPMC Victim Funds, including laundered payments of such funds to Global, the shell entity controlled by ABED and ALAA.   For example, between approximately February and April

2014, five payments totaling approximately $88,000 of laundered JPMC Victim Funds were paid via check to Global from Astoria Food bank accounts controlled by MOUSTAFA.

Woodbury Port, Inc.

23.     Woodbury Port, Inc. ("Woodbury") was registered in New York on or about November 18, 2014.   Woodbury's address was registered as the 42nd Street Address. Records show that Woodbury is a shell company which, in fact, does no real business.   In financial account documents for Woodbury, MOUSTAFA's daughter is listed as the president. Records show that at the time Woodbury was registered in New York, MOUSTAFA's daughter was living outside of the United States.   After Woodbury was registered, approximately three bank and credit card accounts were opened in its name at various financial institutions, with MOUSTAFA's daughter as the sole signatory.   One of these accounts, also registered to the 42nd Street Address, was used to receive JPMC Victim Funds and to distribute those funds to ABED, ALAA, MOUSTAFA, CLAUDIA and VASES, among others.

24.     For example, records, including bank security footage, show that from approximately September through November 2016, ALAA deposited more than $80,000 of JPMC Victim Funds into a Swap business bank account for which ABED was a signatory. The deposits were made in multiple transactions via checks drawn on a Woodbury bank account for which MOUSTAFA's daughter was the sole signatory and which was registered using the 42nd Street Address.   The primary source of the funds transferred from Woodbury to Swap from the checks deposited by ALAA came from JPMC Victim Accounts accessed by ABED and ALAA.

25.     Furthermore, records, including bank security footage, also show that on or about October 10, 2016, ALAA deposited into a bank account in his name a check for

approximately $5,000 drawn on the same Swap account into which he deposited more than $80,000 as described above.

Freeform International, Inc.

26.     On or about February 19, 2013, Freeform International, Inc. ("Freeform") was registered in New York.   Records show that the company's address is the 29th Street Address.   Freeform holds itself out as a wholesale apparel company; in fact, it does no real business.   Instead, VASES, MOUSTAFA, and other coconspirators opened numerous bank and credit card accounts in Freeform's name throughout the Charged Period that were used to receive and distribute JPMC Victim Funds.

27.     For example, on or about November 24, 2014, two Freeform business accounts were opened online at Wells Fargo.   These Freeform accounts, ending -8025 (the "WF-8025 Account") and -8033 (the "WF-8033 Account") each listed Freeform's address as the 29th Street Address.   Individual-1 was the sole signatory on both these business accounts, despite Individual-1's absence from the United States since July 2011.   These Freeform accounts received and laundered JPMC Victim Funds, which were then distributed to ABED, CLAUDIA, MOUSTAFA, VASES and other coconspirators.   For example, records show that at least one check written from the WF-8025 Account and purportedly signed by Individual-1 was used to pay CLAUDIA and MOUSTAFA's rent at the 29th Street Address.   Additionally, bank security records from February and March 2017 show CLAUDIA cashing multiple checks drawn from the WF-8025 Account payable to Woodbury.

28.     As another example, approximately $700,000 of laundered JPMC Victim Funds were paid from a Freeform Bank of America bank account to an M&H bank

account controlled by MOUSTAFA and CLAUDIA.   Individual-1 was again listed as the sole signatory on the Freeform account, which was registered to the 29th Street Address in 2014.

29.     In total, the Defendants used Freeform and its associated financial accounts to misappropriate more than $2 million of JPMC Victim Funds.

Blackstone Capital Group, LLC

30.     Records show that Blackstone Capital Group, LLC ("Blackstone") was incorporated as an LLC in New York on or about March 1, 2010 and registered to the accounting firm where VASES works in Astoria, Queens.   In Blackstone's 2012 New York State biennial filing, VASES signed the filing and identified himself as a "Member" of the company.   As with Freeform, the investigation has revealed that VASES and other members of the conspiracy used bank and credit card accounts in the name of Blackstone to receive and launder stolen JPMC Victim Funds.

31.     Specifically, records show that VASES worked to obtain POS terminals and merchant account services for both Freeform and Blackstone.   The terminals, which were delivered to VASES's office, were then used to charge nearly $2 million worth of fictitious sales paid with JPMC Victim Funds.

E.     Bank Account Transfers

32.     The Defendants conspired with each other and others to misappropriate JPMC Victim Funds in two central ways.   The first method was to transfer money directly from the JPMC Victim Accounts accessed by ABED and ALAA while they were working at JPMC.   These initial transfers were made predominantly through fraudulent checks, online and wire transfers into numerous "First Pass" bank accounts held at various financial

institutions.[3]   The majority of these First Pass financial accounts were held in the names of Individual-1 and Individual-2, and controlled and operated by the Defendants and their coconspirators.   The Defendants and their coconspirators then used these First Pass accounts to transfer the stolen funds and launder them through a second layer of personal and business bank accounts used and controlled by the Defendants and other members of the conspiracy, including into the accounts of shell companies they created and controlled.   The Defendants and their coconspirators then further laundered the stolen funds by transferring them to other financial accounts that they controlled.

33.     By way of illustration, on or about November 13, 2012, ABED used JPMC's internal computer system to access the bank account information of a JPMC customer ("Victim-1").   At the time ABED began accessing Victim-1's account (the "Victim-1 Account"), Victim-1 had been deceased for approximately ten years and the account had a balance of approximately $650,000.   Victim-1 was the sole signatory on the Victim-1 Account and, with the exception of automatic deposits and regularly scheduled debit transactions, the account had been dormant for years.   ABED had no known legitimate business purpose for accessing the Victim-1 Account.

34.     On or about November 16, 2012, four days after ABED first accessed the Victim-1 Account within JPMC's computer systems, a JPMC online account was created for the Victim-1 Account.

---

[3]     First Pass refers to the initial transfer of JPMC Victim Funds from the JPMC Victim Accounts into a set of financial accounts controlled and managed by members of the conspiracy.

35.     Records show that between approximately November 13, 2012 and July 23, 2013, ABED used JPMC's internal computer systems to access the Victim-1 Account at least 20 more times, all for no known legitimate business purpose.   During the same period, approximately $500,000 was misappropriated and transferred out of the Victim-1 Account. The transfers were made primarily through fraudulent checks purportedly signed by Victim-1, as well as by a wire transfer.

36.     The majority of funds transferred from the Victim-1 Account were transferred to a First Pass account held in the name of Individual-1.   The account, which was controlled by the Defendants and other members of the conspiracy, was held at JPMC and ended in 9119 ("the "Indvidual-1 9119 Account").   Records show that approximately eight transactions were executed drawing off a total of approximately $500,000 from the Victim-1 Account.   Three of these transactions were checks purportedly signed by Victim-1, despite his/her being deceased for ten years, and deposited into the Individual-1 9119 Account.   Those transactions, totaling more than $275,000 in Victim-1 funds, were as follows:

- Check # 468 dated January 28, 2013 payable to Individual-1 for $95,500 with the memo line "Mortgage Down Payment" deposited into the Indvidual-1 9119 Account at JPMC and posted on February 1, 2013.

- Check # 474 dated January 30, 2013 payable to Individual-1 for $94,512.65 with the memo line "Estate Account" deposited into the Indvidual-1 9119 Account at JPMC and posted on January 30, 2013.

- Check # 482 dated February 4, 2013 payable to Individual-1 for $86,129.60 with the memo line "Final Payment MTG L045-39624685S" deposited into the Indvidual-1 9119 Account at JPMC and posted on February 4, 2013.

37.     Almost immediately after the misappropriated Victim-1 Account funds were deposited into the Individual-1 9119 Account, approximately $86,500 was laundered and

distributed to accounts held by MOUSTAFA and VASES.   Specifically, on or about January 31, 2013, $75,000 was transferred from the Individual-1 9119 Account into the VASES HELOC Account.   Then, on or about February 1, 2013, approximately $11,500 was transferred to MOUSTAFA's business account for M&H.

38.   Furthermore, bank records show that, through the use of three other First Pass accounts, the Defendants transferred and laundered an additional $225,000 from the Victim-1 Account into accounts controlled by MOUSTAFA, CLAUDIA and VASES, including to the VASES HELOC Account and additional bank accounts in the name of M&H and Astoria Food controlled by MOUSTAFA.

39.   Records show that ABED also used his position at JPMC to access the Individual-1 9119 Account within JPMC's internal computer systems on multiple occasions around the time of the above-described transactions, again for no known legitimate business purpose.

40.   By July 2013, ABED and his coconspirators had misappropriated hundreds of thousands of dollars from the Victim-1 Account.   At around this time, ABED submitted to JPMC a power of attorney request purporting to be from Victim-1 giving permission to Individual-1 to control the remaining funds in the Victim-1 Account.   When JPMC risk management personnel followed-up with ABED on this power of attorney request, ABED falsely stated that he had spoken to Victim-1 and that Victim-1 had personally approved the power of attorney as well as checks previously written from the Victim-1 Account to Individual-1 for, among other things, a mortgage payment.   In fact, at the time, Victim-1 had been deceased for approximately ten years.   Ultimately, JPMC denied the power of attorney request.   Furthremore, at around the time in July 2013 that ABED provided false information

to JPMC, he also used JPMC's internal computer systems to again access the Victim-1 Account multiple times for no known legitimate purpose.

41.    The investigation has revealed that, in a likely effort to avoid such scrutiny in the future, the Defendants stopped using paper checks to misappropriate JPMC Victim Funds and instead began using online and wire transfers to do so.   For example, records show that on or about November 9, 2013, ABED used his position at JPMC to access the account of another JPMC customer ("Victim-2") approximately three times for no known legitimate business purpose.   At the time, Victim-2 had resided outside the United States for years and his/her account (the "Victim-2 Account") had been dormant for years, other than regularly-scheduled interest payments to the account.   Victim-2 was the sole signatory on the account.

42.    When ABED first accessed the Victim-2 Account on or about November 9, 2013, it had a balance of approximately $1 million.   Shortly thereafter, beginning on or about November 14, 2013, and continuing through on or about December 19, 2013, approximately eight transfers were executed from the Victim-2 Account to a First Pass account controlled by the Defendants.   Specifically, eight wire transfers totaling approximately $1 million were made from the Victim-2 Account to a TD Ameritrade Account ending 9144 held in the name of Individual-1 (the "Individual-1 9144 Account").   Immediately before the first transfer of funds received from the Victim-2 Account, the Individual-1 9144 Account had a negative account balance.

43.    Records show that the Individual-1 9144 Account was created on or about November 17, 2011, approximately three months after Individual-1 left the United States.   Both the P.O. Box and email account used to open Individual-1 9144 Account are

linked to numerous other financial accounts opened in Individual-1's name and which were used to launder JPMC Victim Funds, including payments to MOUSTAFA and CLAUDIA.

44.     Records further show that once the misappropriated funds from the Victim-2 Account reached the Individual-1 9144 Account, the coconspirators further laundered the proceeds by transferring approximately $1 million in misappropriated funds into two different accounts held in the name of Individual-1: a Bank of America account (the "Individual-1 5833 Account") and the Individual-1 9814 Account, which is described above. The money was laundered to these two accounts using approximately fifteen wire transfers executed from approximately November 18, 2013 through January 22, 2014.

45.     The Defendants then further laundered the funds from the Victim-2 Account and distributed the proceeds among themselves.  Specifically, between December 2013 and February 2014, MOUSTAFA received more than $100,000 in Victim-2 funds via checks purportedly signed by Victim-2 made payable to MOUSTAFA's business, Astoria Food, and deposited into MOUSTAFA-controlled bank accounts.  MOUSTAFA then paid tens of thousands of dollars of these funds to ABED through transfers to Global, ABED's shell entity.  Additionally, as set forth above, records, including bank security camera records, show that CLAUDIA and MOUSTAFA used the Individual-1 9814 Account to make deposits of JPMC Victim Funds.

46.     The investigation has revealed that during the Charged Period, the Defendants used the above-described scheme to misappropriate and launder more than $4 million in JPMC Victim Funds from numerous JPMC Victim Accounts, all of which were accessed by ABED or ALAA using JPMC's internal computer systems.

F.      Credit Card Transfers

47.      The other primary method the Defendants used to misappropriate JPMC Victim Funds involved transferring the funds from JPMC Victim Accounts to make payments to a series of credit card accounts controlled and operated by the Defendants and their coconspirators.   The Defendants used credit cards in the names of Individual-1 and Individual-2 to charge sales by the shell companies they controlled, like Freeform and Blackstone, principally using the POS terminals obtained by VASES.   They then transferred funds from the JPMC Victim Accounts to pay these charges, which had the effect of transferring the JPMC Victim Funds to the shell companies controlled by the Defendants. The Defendants also transferred personal credit card balances to the credit cards in the names of Individual-1 and Individual-2, and then used JPMC Victim Funds to pay off the credit card balances.

48.      Specifically, approximately 24 credit card accounts in Individual-1's and Individual-2's names received approximately $2 million in payments directly from JPMC Victim Accounts.   Approximately $1.2 million more was paid to business credit card accounts for which Individual-1 and Individual-2 were the signatories.

49.      For example, between approximately 2015 and 2017, an American Express ("Amex") credit card ending 23-1004 in the name of Blackstone and Individual-2 (the "Individual-2 Amex Account") received more than $700,000 in payments from approximately 16 JPMC Victim Accounts.   Records, including Internet Protocol ("IP") data, show that this Amex account was opened in the United States after Individual-2 left the country.   The account charged more than $700,000 in fictitious sales at Freeform, the shell company controlled by MOUSTAFA and VASES.   Records further show that a Freeform bank account

funded in part by the fictitious sales subsequently transferred misappropriated JPMC Victim Funds to VASES, MOUSTAFA and other coconspirators and entities controlled by them, including Woodbury.

50.    As another example, between approximately 2015 and 2016, an American Express credit card in Individual-1's name ending 35-1005 (the "Individual-1 Amex Account") received approximately $2,500 in payments from a JPMC Victim Account accessed by ALAA using JPMC's computer systems.   Records, including IP data, show that the Individual-1 Amex Account was opened in the United States after Individual-1 left the country and that the address for the account was the 29th Street Address.   Records further show that in August 2016, MOUSTAFA used the Individual-1 Amex Account to purchase eyeglasses.

51.    Records also show that a credit card opened at First National Bank of Omaha in Individual-2's name after he/she left the United States received payments of more than $50,000 during the Charged Period from approximately three JPMC Victim Accounts accessed by ABED and ALAA.   Records show that on or about December 22, 2014, ABED attempted to use the First National Bank credit card account to make a purchase at Costco.

52.    As another example, a TD Bank credit card in Individual-1's name received approximately $39,000 in funds misappropriated from a JPMC Victim Account. Records show that on or about March 17, 2016, CLAUDIA used the credit card to make a purchase at a CVS store near her residence in Astoria, Queens.

53.    In total, ABED, ALAA, CLAUDIA, MOUSTAFA and VASES conspired together and with others to misappropriate approximately $3.2 million using the credit-card scheme described above.   Of this $3.2 million, approximately $1.7 million of

misappropriated JPMC Victim Funds was transacted through Freeform and distributed through multiple financial transactions to accounts maintained and controlled by the coconspirators.

WHEREFORE, your deponent respectfully requests that arrest warrants issue for defendants ABED AHMAD, ALAA AHMAD, CLAUDIA AYOUB, MOUSTAFA AYOUB and CONSTANTINE VASES, so that they may be dealt with according to law.   I further request that this affidavit, and the arrest warrants, be filed under seal as premature disclosure of this application would give the Defendants an opportunity to destroy evidence, harm or threaten victims or other witnesses, change patterns of behavior, notify confederates and flee or evade prosecution, with the exception that the complaint and arrest warrants are unsealed for the limited purpose of disclosing the existence of or disseminating the complaint and/or arrest warrant to relevant U.S., foreign or intergovernmental authorities, at the discretion of the United States and in connection with efforts to prosecute the defendants or secure the defendants' arrest, extradition or expulsion, or as otherwise required for the purposes of national security.

S/ Jeffrey Miller
JEFFREY A. MILLER
Supv. Special Agent, Internal Revenue Service

Sworn to before me this
3rd day of February, 2020

S/ Roanne Mann
THE HONORABLE ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK